**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Begay, | No. CV-16-08221-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiff Jason Begay, a member of the Navajo Nation, seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") denying him relocation benefits under the Navajo-Hopi Settlement Act. Doc. 1. The parties have filed cross motions for summary judgment. Docs. 36, 39. The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant Plaintiff's motion and remand for further proceedings.[1]

**I.  Background.**

President Chester A. Arthur set aside a 2.5 million acre reservation in Arizona in 1882 for the Hopi Nation and "such other Indians as the Secretary of the Interior may see

---

[1] Defendant's Answer asserts that this Court lacks subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. Doc. 33 at 4. Defendant does not make this argument in its summary judgment motion (*see* Docs. 39, 46), and the record reveals that Defendant finalized its denial and concluded the administrative review process (A.R. 144). The Court is therefore satisfied that it has subject matter jurisdiction. 28 U.S.C. § 1331; 5 U.S.C. §§ 701-06.

fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled on the reservation alongside the Hopi. *Id.* In the decades that followed, attempts to resolve inter-tribal conflicts ultimately resulted in the Navajo-Hopi Settlement Act in 1974. *Id.* This statute authorized the district court to partition the reservation and created Defendant's predecessor to help relocate Indians who resided on land partitioned to the other tribe. *Id.* at 1121-22.

To be eligible for relocation benefits, a Navajo applicant bears the burden of demonstrating that he or she was (1) a legal resident of the Hopi Partitioned Lands ("HPL") on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147. A single applicant who was never married or a parent can qualify as a head of household only by demonstrating self-support. *Id.* § 700.69(a)(2).

Plaintiff was born on December 16, 1965 (A.R. 137) and was a legal resident of the HPL on December 22, 1974 (A.R. 13). In 1980, Plaintiff moved to Richfield, Utah, where he worked and attended high school. A.R. 137. Plaintiff moved to Salt Lake City, Utah, in January 1984, where he lived with his brother until graduation from high school in May 1984. *Id.* Plaintiff then relocated to California, where he held part-time jobs at McDonalds and Jack-in-the-Box in the summer of 1984. A.R. 74, 138. Plaintiff secured a full-time job at a California computer company in November 1984. A.R. 138.

Defendant's predecessor included Plaintiff in the relocation benefits it awarded to his mother, Mary Begay, on September 11, 1984. A.R. 27. Plaintiff separately applied for his own relocation benefits on March 9, 2009. A.R. 9. Defendant's application form called for Plaintiff to record his full-time – not part-time – employment history. A.R. 14. Plaintiff noted his full-time employment for the computer company, but did not mention his part-time employment for McDonalds or Jack-in-the-Box. *See* A.R. 14, 85-86. Contemporaneous notes from a May 2009 screening interview regarding Plaintiff's application reveal only one part-time job – a youth program at Richfield High School in 1983. A.R. 23; Doc. 36 at 8.

Defendant denied Plaintiff's application on February 22, 2010, citing his failure to establish his status as a head of household before his mother's receipt of relocation benefits on September 11, 1984. A.R. 27. Because Plaintiff was included in the family's relocation benefits, Defendant reasoned that this was the last possible date he resided on the HPL. *Id.* Plaintiff was neither married nor a parent before September 11, 1984, so Plaintiff could qualify as a head of household only by demonstrating self-support, which requires that he earned at least $1,300 per year. *Id.* His full-time employment for the computer company, which started in November 1984, could not establish self-support before September 11, 1984. *See id.*

Plaintiff initiated an administrative appeal on March 18, 2010. A.R. 31-33. Before his appeal hearing, Plaintiff submitted a letter that described his part-time employment from January to May 1984 for a landscaping company in Salt Lake City. A.R. 60. Plaintiff explained that he worked 28 hours per week as a landscaper for his Mormon seminary teacher, Mark Staples. *Id.* Mr. Staples allegedly paid Plaintiff in cash, and neither Mr. Staples nor Plaintiff reported the wages to the Internal Revenue Service. A.R. 51-53, 82. Plaintiff's earnings from this part-time employment allegedly totaled $1,840. A.R. 60.

At an October 2010 hearing, the Hearing Officer heard testimony from Plaintiff; his mother, Mary Begay; his brother, Tully Begay; and his screening interviewer, Joseph Shelton. Mr. Staples was deceased. A.R. 73. Mary Begay testified that (1) Plaintiff was, for the most part, raised by his grandparents (A.R. 97); (2) Plaintiff worked for "the white man" while in high school (A.R. 95-96); and (3) she never visited Plaintiff in Utah (A.R. 99). Tully Begay testified that (1) Plaintiff lived with him from January to May 1984 while finishing his senior year of high school (A.R. 102); (2) Plaintiff worked for a landscaping company, which caused him to be gone "[m]ost of the time" (A.R. 102-04); and (3) he could not identify Mr. Staples, whom he had never met (A.R. 110-11). Mr. Shelton testified that he had no independent recollection of the screening interview, but that he took contemporaneous notes regarding the conversation. A.R. 112-13. Mr.

Shelton gave inconsistent testimony about whether he would have noted the landscaping job. A.R. 113.

The Hearing Officer issued a decision in January 2011 affirming the denial of relocation benefits (A.R. 142), which became Defendant's final decision in July 2011 (A.R. 144).

## II.    Legal Standard.

A reviewing court may reverse an ONHIR decision under the Administrative Procedure Act ("APA") if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122. A decision is arbitrary and capricious if the agency "'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chu v. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) (internal quotation marks and citation omitted). This standard is deferential. The Court "may not substitute its judgment for that of the agency." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (internal quotation marks and citation omitted).

"[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 WL 2806841, at *2 (D. Ariz. June 29, 2017) (internal quotation marks and citation omitted). "[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new

record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. Summary Judgment.

The central issue presented by the summary judgment motions is whether the Hearing Officer's decision to discredit Plaintiff's alleged landscaping employment was arbitrary, capricious, or unsupported by substantial evidence. Plaintiff argues that the decision was a clear error of judgment. Doc. 36 at 7-12. Defendant encourages the Court to defer to the Hearing Officer's decision. Doc. 39 at 6-15.

The Hearing Officer found that Plaintiff "performed some part-time work for [Mr.] Staples between January and May 1984" (A.R. 137), but ultimately concluded that the "testimony about such part-time employment is not convincing and [Plaintiff] has not met his burden of proof about self-support" (A.R. 140). Specifically, he reasoned that Plaintiff's "declaration about working 4 hours each weekday and 8 hours each weekend, without any corroboration, is not credible." *Id.* The Officer therefore found that Plaintiff did not qualify as a self-supporting head of household before September 11, 1984. A.R. 141-42. He based this conclusion on four findings.

First, the Hearing Officer cited Plaintiff's failure to disclose his landscaping income in his interview with Mr. Shelton. A.R. 141. But Mr. Shelton had no independent recollection of the interview. A.R. 112-13. Plaintiff likewise had little, if any, recollection of the interview. *See* A.R. 88-89. The Officer could only rely on Mr. Shelton's contemporaneous notes of the interview, but Mr. Shelton equivocated on whether he would have even recorded a part-time landscaping job. A.R. 113. Thus, the Hearing Officer had no clear basis for concluding that Plaintiff failed to disclose the landscaping job when he spoke with Mr. Shelton.

What is more, Plaintiff's failure to mention the landscaping job would have been consistent with Defendant's application form, which limited the scope of the inquiry to

full-time employment. A.R. 14. Granted, Plaintiff's compliance with the form's instruction was somewhat inconsistent. He did not disclose his undisputed part-time positions at McDonalds and Jack-in-the-Box on the application form (A.R. 14), and there is no indication that he revealed these jobs to Mr. Shelton (A.R. 23). These omissions are consistent with the form's request only for full-time work. A.R. 14. But Mr. Shelton's notes reveal that Plaintiff disclosed his part-time work for the youth program. A.R. 23. Plaintiff's arguable inconsistency in following the form cannot be considered in evaluating the Hearing Officer's decision, however, because the Officer did not address this issue.

Second, the Hearing Officer suggested that Tully Begay was "totally ignorant about such part-time employment even though they lived together." A.R. 141. This is incorrect. Tully recalled that Plaintiff was away "[m]ost of the time" working for a landscaping company. A.R. 102-04. He could not identify Mr. Staples, but he also testified that he never met him. A.R. 110-11. The Hearing Officer's description of Tully Begay's testimony is inconsistent with the record.

Third, the Hearing Officer relied on Mary Begay's unawareness of the landscaping job, "even though she knew that he performed work for the 'white man,' applicant's foster father." A.R. 141. This too mischaracterizes the record. Mary Begay testified that Plaintiff worked throughout high school, but she did not elaborate on the type of work and she could only identify the employer as a "white man." A.R. 95-96. Additionally, Mary Begay's testimony is not particularly probative given that she did not live with Plaintiff while he was in Utah, she never visited him in Utah, and Plaintiff was "pretty much raised by his grandparents." A.R. 97, 99. Thus, in addition to the fact that she did not identify the "white man" for whom Plaintiff worked, Plaintiff's mother was not in a position to know the details of his employment in Utah.

Finally, the Hearing Officer expressed doubt that a Mormon business owner would break the law and forego tax deductions for employee wages. A.R. 141. But the record contains no evidence regarding Mr. Staples' usual method of payment for part-time

- 6 -

1 employees. A.R. 92. The Hearing Officer made assumptions about payment practices on which he had no evidence.

The Court concludes that none of the four reasons identified by the Hearing Officer provided a basis for rejecting Plaintiff's claim about his landscaping job. The Court accordingly finds the Hearing Officer's decision to be arbitrary, capricious, and unsupported by substantial evidence.

**IV.     Remedy.**

"If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). A rare circumstance might arise where the reviewing court finds that the record clearly demonstrates an applicant's eligibility for relocation benefits. *E.g.*, *Bedoni*, 878 F.2d at 1126; *Herbert v. ONHIR*, No. CV 06-03014-PCT-NVW, 2008 WL 11338896, at *8 (Feb. 27, 2008).

In this case, the Court concludes that further proceedings are warranted. The Court cannot find on this record that Plaintiff's testimony about his landscaping position is true. He did not mention the position until after he was denied benefits, he has no receipts or other documentation to support his claim of being self-supporting during this time, and he claims to have worked four hours per weekday and eight hours per day on weekends – a heavy work schedule for high school. Plaintiff has arguments in his favor as well, but this only points to the need for further proceedings. The Court will remand for an appropriate decision on the landscaping job.

**V.     Other Issues.**

The Hearing Officer reasoned that Plaintiff was a legal resident of the HPL until either his relocation to California in the summer of 1984 or his mother's receipt of benefits in September 1984. A.R. 141-42. Plaintiff did not challenge this finding in his motion for summary judgment. *See* Doc. 36. Plaintiff argues for the first time in his reply that he remained a legal resident of the HPL after September 1984. Doc. 43 at 3-4.

The Court will not consider arguments raised for the first time in a reply brief. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

Defendant objects to Plaintiff's submission of 17 exhibits. Doc. 39 at 5-6. The Court has not considered those exhibits.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 36) is **granted.**
2. Defendant's cross-motion for summary judgment (Doc. 39) is **denied**.
3. The final decision of the Office of Navajo and Hopi Indian Relocation is **vacated** and this case is **remanded** for further proceedings.
4. The Clerk is directed to terminate this action.

Dated this 28th day of September, 2017.

_____
David G. Campbell
United States District Judge